UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 04-0430 (PLF) |
| | ) | |
| ANTHONY T. LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

OPINION

This matter came before the Court for a second resentencing on June 1, 2009.

Defendant Anthony T. Lewis previously pled guilty to one count of a five-count indictment, each

of which charged unlawful distribution of five grams or more of cocaine base. At the time of his

plea, Mr. Lewis acknowledged that he was accountable for 187.7 grams of cocaine base, also

known as crack cocaine. Mr. Lewis has 17 criminal history points and therefore his Criminal

History Category is VI.

At the original sentencing on October 14, 2005, the Court applied a 20-to-1 crack-

to-powder ratio rather than the 100-to-1 ratio contained in the Sentencing Guidelines. Had the

Court applied the crack Guidelines as they existed on October 14, 2005, including the 100-to-1

ratio, Mr. Lewis would have been at Offense Level 31, Criminal History Category VI, resulting

in a sentencing range of 188 to 235 months. At the first resentencing on December 21, 2007, the

Court again applied a 20-to-1 ratio, even though the crack Guidelines had recently been amended

in a way favorable to Mr. Lewis. (The amendments ameliorated the previous disparity, but not

entirely. Applying them would have put Mr. Lewis at Offense Level 29, Criminal History

Category VI, resulting in a sentencing range of 151 to 188 months.)  By applying a 20-to-1 ratio

at both sentencings, the Court reached the conclusion that Mr. Lewis was at Offense Level 27,

Criminal History Category VI, which corresponded with a sentencing range of 130 to 162

months.  For the reasons then explained, the Court sentenced Mr. Lewis to 162 months

imprisonment – that is, the high end of the range – on both occasions.[1]

At the second resentencing on June 1, 2009, as a matter of policy the Court

adopted a new approach to sentencing in crack cocaine cases, an approach it will take in this case

and in all future crack cocaine sentencings.  Henceforth, this Court will apply a 1-to-1 crack-to-

powder ratio and then, in appropriate cases, will vary upward to take account of any aggravating

factors that may exist.  This Opinion explains the Court's reasoning for adopting the new

approach.

I.

Shortly after the Supreme Court decided in United States v. Booker, 543 U.S. 220

(2005), that the United States Sentencing Guidelines are advisory only, this Court began to apply

a 20-to-1 crack-to-powder ratio in crack cocaine sentencings.  Recognizing that after Booker and

under 18 U.S.C. § 3553(a) the Sentencing Guidelines were only one factor to consider in

sentencing, this Court considered both the policy concerns underlying the crack/powder disparity

and the Section 3553(a) factors as they applied to the individual being sentenced.  The Court

---

[1]        The procedural history of this case and why it is before the Court for a second
resentencing are not germane to this Opinion, but can be found in the prior decisions and orders
of the D.C. Circuit as well as the parties' filings.  See United States v. Lewis, No. 08-3002, Order
(D.C. Cir. Mar. 13, 2009); United States v. Lewis, 471 F.3d 155 (D.C. Cir. 2006).  See also
Government's Memorandum in Aid of Second Resentencing at 1-4 (May 14, 2009).

acknowledged that post-Booker the Sentencing Commission's expertise still entitled the

Guidelines to serious consideration, see, e.g., Booker v. United States, 543 U.S. at 245; Gall v.

United States, 128 S. Ct. 586, 596-97 (2007); Kimbrough v. United States, 128 S. Ct. 558, 564

(2007), but concluded that in the case of crack cocaine the Commission's expertise was reflected

not in the Guidelines themselves, but rather in the numerous reports on the crack/powder

disparity the Commission issued between 1995 and 2007.

This Court's approach was endorsed by the D.C. Circuit in United States v.

Pickett, 475 F.3d 1347 (D.C. Cir. 2007). In Pickett, the D.C. Circuit reviewed the history of the

crack Guidelines and noted that the Sentencing Commission itself has been "one of [the] severest

critics" of those Guidelines. Id. at 1353. Specifically, the court observed that "[f]or more than a

dozen years," in numerous extensive reports, the Commission has argued strongly against

retaining the 100-to-1 ratio. Id. at 1353-54. The court further noted the Commission's

recommendation to substitute a 20-to-1 ratio, a recommendation on which Congress never acted.

Id. at 1351. In the end, the D.C. Circuit not only concluded that sentencing judges have

discretion under Booker to consider a 20-to-1 ratio – rather than to apply rigidly the 100-to-1

ratio embodied in the crack Guidelines – but suggested that it would be an abuse of discretion for

a judge not to at least consider a 20-to-1 ratio. See id. at 1356.

Less than a year after the D.C. Circuit issued its opinion in Pickett, the Supreme

Court announced its agreement with that approach in Kimbrough v. United States, 128 S. Ct. 558

(2007). Justice Ginsburg, writing for the Court, began by summarizing the history of the

crack/powder disparity embodied in the 100-to-1 ratio. She noted that in formulating the crack

Guidelines, the Sentencing Commission did not use its usual empirical approach, but rather

employed the "weight-driven scheme" of Congress' 1986 Anti-Drug Abuse Act.  In other words,

the Commission set base offense levels for drug offenders by adopting the Act's 100-to-1 ratio

throughout the crack and powder cocaine Guidelines.  Id. at 567; see also id. at 575 (noting that

"those Guidelines [therefore] do not exemplify the Commission's exercise of its characteristic

institutional role").  This, the Court held, was not required by law.  See id. at 571-72.  Given the

history of the crack Guidelines and the Commission's own view, reiterated on many occasions,

that the crack/powder disparity produces disproportionately harsh sentences, the Supreme Court

concluded that "it would not be an abuse of discretion for a district court to conclude when

sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than

necessary' to achieve § 3553(a)'s purposes, even in a mine-run case."  Id. at 575.

        While it seemed clear from Kimbrough that courts had discretion to vary from the

crack Guidelines based on the same sort of overarching policy disagreements expressed by the

Sentencing Commission in its reports, and not just based on individualized factors in particular

cases, there still were some courts that resisted that conclusion.  This led to the most recent

discussion of the matter by the Supreme Court in Spears v. United States, 129 S. Ct. 840 (2009)

(per curiam).  Kimbrough, the Court said in Spears, recognized the authority of district courts to

vary from the crack Guidelines "based on *policy* disagreement with them, and not simply based

on an individualized determination that they yield an excessive sentence in a particular case."

Id. at 843 (emphasis in original).  The Court also quoted with approval the dissent in the Eighth

Circuit's en banc decision in Spears.  In that dissent, Judge Colloton recognized that in

Kimbrough the Supreme Court had

4

> established that even when a particular defendant in a crack
> cocaine case presents no special mitigating circumstances – no
> outstanding service to country or community, no unusually
> disadvantaged childhood, no overstated criminal history score, no
> post-offense rehabilitation – a sentencing court may nonetheless
> vary downward from the advisory guideline range.  The court may
> do so based solely on its view that the 100-to-1 ratio embodied in
> the sentencing guidelines for the treatment of crack cocaine versus
> powder cocaine creates "an unwarranted disparity within the
> meaning of § 3553(a)," and is "at odds with § 3553(a)."  The only
> fact necessary to justify such a variance is the sentencing court's
> disagreement with the guidelines – its policy view that the 100-to-1
> ratio creates an unwarranted disparity.

United States v. Spears, 533 F.3d 715, 719 (8th Cir. 2008) (en banc) (Colloton, J., dissenting)

(citations omitted).

In short, it now is established that a sentencing court may reject the 100-to-1 ratio

of the Guidelines as a matter of policy and without regard to the characteristics of the individual

defendant.  But this raises another question: If the sentencing court rejects the 100-to-1 ratio, then

what ratio *should* it apply?  For reasons stated by this Court in this and other cases and by the

D.C. Circuit in Pickett, this Court previously had adopted a 20-to-1 ratio and, in each case,

explained its reasons for applying that ratio.  For the reasons explained below, this Court now

adopts a 1-to-1 crack-to-powder ratio, and will apply the 1-to-1 ratio in all crack cocaine cases

that come before it for sentencing in the future.  In other words, this Court will take precisely the

approach endorsed by the Supreme Court in Spears:

> A sentencing judge who is given the power to reject the disparity
> created by the crack-to-powder ratio must also possess the power
> to apply a different ratio which, in his judgment, corrects the
> disparity.  Put simply, the ability to reduce a mine-run defendant's
> sentence necessarily permits adoption of a replacement ratio. . . .

> [D]istrict courts are entitled to reject and vary categorically from
> the crack-cocaine Guidelines based on a policy disagreement with
> those Guidelines.

Spears v. United States, 129 S. Ct. at 843-44.


II.


The Court concludes that there are sound policy reasons for adopting a 1-to-1 ratio

for all crack cocaine sentencings.  In doing so, the Court adopts the reasoning of Judge Mark W.

Bennett in his recent decision in United States v. Gully, Criminal No. 08-3005, 2009 WL

1370898 (N.D. Iowa May 18, 2009).  In that opinion, Judge Bennett reviewed in some detail the

history of the crack/powder disparity, the Kimbrough and Spears decisions, the Sentencing

Commission's view that the crack/powder sentencing disparity fosters disrespect for the criminal

justice system by promoting unwarranted disparities, the welcome but incomplete ameliorating

change in the crack Guidelines adopted by the Sentencing Commission in 2007, and other policy

considerations.  Based on his review of that history, Judge Bennett concluded that "it now

appears that even the Commission's recommendation of a 20:1 ratio" –  the ratio that both Judge

Bennett and this Court consistently applied following Booker – "was influenced at least as much

by prior congressional rejections of lower ratios [proposed by the Commission] and the policy

considerations that Congress had mandated be part of the calculus of the appropriate ratio than by

empirical evidence concerning the appropriate sentence for crack offenses."  United States v.

Gully, 2009 WL 1370898 at *7.

As Judge Bennett explained in some detail in Gully, there are at least five distinct

policy objections to a disparity – any disparity – between crack and powder cocaine sentences:

6

(1) the current cocaine Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," Kimbrough v. United States, 128 U.S. at 575; see also Spears v. United States, 129 S. Ct at 843; (2) the assumptions about the relative harmfulness of crack and powder cocaine have not been borne out by the evidence; (3) the crack/powder disparity perversely tends to punish lower-level dealers more harshly than major traffickers because imported powder cocaine is converted into crack at a lower level in the trafficking hierarchy; (4) the 20-to-1 ratio "still improperly uses the quantity ratio as a proxy for various kinds of harm and violence that may or may not come with trafficking of crack cocaine in a particular case"; and (5) the crack/powder disparity fosters disrespect for and mistrust in the criminal justice system because of its disproportionate impact on African American defendants.  United States v. Gully, 2009 WL 1370898 at *6-*7.  This Court agrees with Judge Bennett wholeheartedly.

        The Court notes, as did Judge Bennett, that the Department of Justice recently endorsed completely eliminating the disparity between crack and powder cocaine sentencing.  On April 29, 2009, Assistant Attorney General Lanny Breuer testified before the Subcommittee on Crimes and Drugs of the United States Senate Committee on the Judiciary.  Assistant Attorney General Breuer testified that the Justice Department now supports an approach that would eliminate the disparity between crack and powder cocaine sentencing *and* fully account for any aggravating factors (such as violence, injury, recidivism or possession or use of weapons) in individual cases.  See Statement of Lanny A. Breuer, Assistant Attorney General, Criminal Division, United States Department of Justice, Before the United States Senate Committee on the Judiciary, Subcommittee on Crime and Drugs, Hearing Entitled "Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity," at 10-11 (April 29, 2009).  Notably, in his

testimony Assistant Attorney General Breuer highlighted the same policy objections to the

crack/powder disparity that Judge Bennett discussed in <u>Gully</u>.  <u>See id</u>. at 5-9.

      In testimony at the same hearing, Judge Reggie B. Walton of this Court, testifying

on behalf of the Judicial Conference of the United States, noted that experience has shown that

"the existing disparity [between crack and powder sentences] may actually frustrate (instead of

advance) the goals of the Sentencing Reform Act," and that there is now "almost universal

support in the United States to reduce the existing sentencing disparity between crack and

powder cocaine."  Statement of Judge Reggie B. Walton, On Behalf of the Judicial Conference

of the United States, Before the United States Senate Committee on the Judiciary, Subcommittee

on Crime and Drugs, Hearing Entitled "Restoring Fairness to Federal Sentencing: Addressing the

Crack-Powder Disparity," at 6 (April 29, 2009).  On behalf of the Judicial Conference, Judge

Walton called for a reduction in or elimination of the crack/powder cocaine disparity and for the

elimination of statutorily enacted mandatory minimum penalties.  <u>Id</u>. at 8-9.

      For all of these reasons, this Court disagrees, as a matter of policy, with both the

amended 100-to-1 crack-to-powder ratio currently embodied in the Sentencing Guidelines and

the 20-to-1 ratio the Sentencing Commission more recently endorsed for practical political

reasons.  The Court instead concludes that the appropriate ratio is 1-to-1.  Thus, in the future, this

Court will apply the 1-to-1 ratio in all crack cocaine cases and then will separately consider all

aggravating factors applicable in any individual case, such as violence, injury, recidivism or

possession or use of weapons.  <u>See United States v. Gully</u>, 2009 WL 1370898 at *9.[2]

---

      [2]    This approach is consistent with the Guidelines revisions originally proposed by
the Sentencing Commission in 1995 in its first report on the crack/powder disparity.  <u>See United
States v. Gully</u>, 2009 WL 1370898 at *6, *9.

Henceforth this Court will employ a three-step approach – or where mandatory minimum sentences are implicated, a four-step approach – to sentencing in crack cocaine cases. First, it will calculate the sentencing range under the existing Sentencing Guidelines (*i.e.*, it will use the amended 100-to-1 ratio found in the Guidelines and then factor in any appropriate adjustments or departures contained within the Guidelines).  Second, it will calculate an alternative sentencing range using a 1-to-1 ratio (by using the powder cocaine Guidelines) and then factor in any appropriate adjustments or departures contained within the Guidelines.  Third, it will consider whether it is appropriate to vary from the alternative 1-to-1 sentencing range based on the Court's consideration of the relevant factors set forth in 18 U.S.C. § 3553(a) as they apply to the individual defendant and the particular case – including, but of course not limited to, any aggravating factors such as violence, injury, recidivism or possession or use of weapons.  See United States v. Gully, 2009 WL 1370898 at *9.  While theoretically this could lead to a downward variance, in view of the Court's approach it would more likely lead to an upward variance in an individual case to take account of the defendant's history of violence, the use of violence in a particular case, injury to others, the presence or use of firearms or other weapons, or the defendant's recidivism.  As a fourth and final step, the Court will of course implement any statutory mandatory minimums applicable to the case – even though the statutory mandatory minimums themselves embody the now-discredited 100-to-1 ratio between crack and powder cocaine offenses.

III.

Applying that approach in this case, the Court looks to the powder cocaine Guidelines. Because Mr. Lewis acknowledged responsibility for 187.7 grams of crack cocaine at the time of his plea, the Court finds that Mr. Lewis' base offense level is now Offense Level 18. See U.S.S.G. § 2D.1(c)(11). Because Mr. Lewis pled guilty and acknowledged his responsibility in this case, he is entitled to either a two-level or three-level downward adjustment under Section 3E1.1 of the Guidelines. In view of the Court's decision to apply a 1-to-1 ratio, the government announced in open court on June 1, 2009 that it would no longer accede to the third point for acceptance of responsibility.[3] Accordingly, after deducting two levels for acceptance of responsibility, Mr. Lewis' adjusted offense level is Offense Level 16. No other adjustments apply in this case. Because Mr. Lewis has 17 criminal history points, he is at Offense Level 16, Criminal History Category VI. The advisory sentencing range for Mr. Lewis therefore is 46 to 57 months. Because there is a congressionally mandated statutory minimum sentence of 120 months, however, that is the minimum sentence the Court lawfully may impose.

Thus, the only remaining question is whether the Court should vary upward from the advisory Guidelines sentencing range because of Mr. Lewis' extensive criminal history. (The government still urges the Court to sentence Mr. Lewis to 162 months incarceration, as the Court did twice before.) As the Court noted at Mr. Lewis' original sentencing on October 14, 2005, and again at his first resentencing on December 21, 2007, Mr. Lewis has had a long career of

---

[3] The Court is not sure how, as a logical matter, the significance of Mr. Lewis' decision to plead guilty several years ago could be changed by the Court's decision to adopt a new sentencing policy. Under Section 3E1.1 of the Guidelines, however, the Court may not grant the third point for acceptance of responsibility except upon motion of the government.

crime in the District of Columbia; much of it involved drugs, some of it involved guns, and some of it involved domestic violence.  See Transcript of Sentencing at 30-31 (Oct. 14, 2005); Transcript of Sentencing at 24-25 (Dec. 21, 2007).  The Court also noted on both occasions that Mr. Lewis created for himself the situation he faced at sentencing based on his life of crime over many years. See Transcript of Sentencing at 30 (Oct. 14, 2005); Transcript of Sentencing at 24 (Dec. 21, 2007).

At the original sentencing, the Court asked Mr. Lewis "why I should believe that all of a sudden you are turning your life around when you've had this long career of crime from the age of 18 to the age of 33."  Transcript of Sentencing at 30 (Oct. 14, 2005).  In the three-and-one-half years since the Court asked that question, however, Mr. Lewis, who is now 37 years old, has indeed demonstrated that he has begun to turn his life around.  While incarcerated, he earned his GED and took Spanish language classes to prepare himself to become part of the work force in a multi-lingual community upon his release from prison.  He successfully completed a 48-hour drug treatment program and looks forward to the time, two or three years from now, when he will be eligible for the 500-hour residential drug treatment program offered by the Bureau of Prisons. Finally, he completed training to become a counselor for other inmates with respect to depression and suicidal tendencies, and he staffs a suicide hotline in the prison.  These are all positive indicators which – unlike the unsupported statements Mr. Lewis previously made to the Court – tend to show that Mr. Lewis has now taken concrete steps to try to turn his life around.  Of course, Mr. Lewis' very significant criminal history has not changed.  But Mr. Lewis is older, and he has taken steps which suggest that he is wiser and preparing for a productive and (one has reason to hope) law-abiding return to society.

For all of these reasons, the Court has decided to vary upward but not, as the government requests, to the previously imposed term of 162 months.  The Court will instead sentence Mr. Lewis to a period of 130 months in prison, with credit for the time served, to be followed by five years of supervised release with all of the conditions previously set forth in the Amended Judgment and Commitment of December 28, 2007.  This sentence is reflected in the Second Amended Judgment and Commitment issued this same day.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: June 9, 2009